IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES R. MYERS              :
                            :
     v.                     :        CIVIL NO. CCB-09-3391
                            :
MARYLAND AUTOMOBILE         :
INSURANCE FUND              :
                       ...o0o...

**MEMORANDUM**

Now pending before the court are defendant Maryland Automobile Insurance Fund's ("MAIF's") motion to dismiss the complaint and plaintiff James R. Myers's motion for leave to amend the complaint. Mr. Myers alleges six causes of action against MAIF under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* The motions have been fully briefed and no oral argument is necessary. For the reasons that follow, the plaintiff's motion will be denied and the defendant's motion will be granted.

**BACKGROUND**

Mr. Myers was born on July 6, 1943. He was employed by MAIF from 1990 until September 30, 2007. At all times relevant to this lawsuit, Mr. Myers was a Technician III, Customer Service Representative within MAIF's First Call Express Unit. The complaint alleges that Mr. Myers suffers from severe depression, permanent injuries to his spine, gastrointestinal problems, high blood pressure, and chronic arthritis. In addition, Mr. Myers is alleged to lack the full function and movement of his hands. He also has pain in his feet while walking and difficulty sitting for long periods of time. Moreover, he experiences fatigue and decreased sleep, as well as unstable weight gain and loss. He alleges that almost every day he experiences a diminished interest or pleasure in almost all activities.

1

In January 2007, Mr. Myers was assigned a new supervisor at MAIF, Marsha Williams. Mr. Myers alleges that he had received only favorable performance evaluations prior to Ms. Williams becoming his supervisor. According to Mr. Myers, Ms. Williams was aware of his medical conditions and his age from and after January 2007. Mr. Myers alleges that as soon as Ms. Williams became his supervisor, she constantly micro-managed, harassed, and belittled him, and issued him unwarranted negative performance evaluations. Ms. Williams's actions are alleged to have been severe and pervasive enough to have altered the terms and conditions of Mr. Myers's employment.

The specific acts of which Mr. Myers complains are as follows. First, on May 7, 2007, Ms. Williams issued Mr. Myers a "counseling memorandum" that he alleges set unjustified and unreasonable demands on him. The complaint does not detail the contents of the counseling memorandum, other than to state that it threatened termination if Mr. Myers failed to comply. Next, on May 15, 2007, Ms. Williams placed Mr. Myers on a performance "action plan". Again, the complaint does not describe the contents of the action plan. Finally, the complaint alleges simply that on August 29, 2007 Mr. Myers received a negative performance review.

In addition, Mr. Myers alleges specifically with regard to his ADA claims that on January 9, 2007, Ms. Williams counseled him in regard to his typing speed, which she allegedly knew was affected by his arthritis. Furthermore, Mr. Myers alleges that from January 2007 – September 30, 2007, rather than acknowledging and taking into consideration Mr. Myers's physical and mental limitations, Ms. Williams increased his stress by setting unrealistic goals for him, micro-managing his work, and exhibiting animosity towards him. The complaint does not contain any specific factual allegations, however, regarding the way in which she did so.

Other comparable employees without a reported disability were not treated this way,

alleges Mr. Myers. Mr. Myers does not appear to allege, however, that he demanded, or that MAIF denied him, any reasonable accommodation on account of his age or disability. Mr. Myers also alleges that younger employees did not receive comparable negative performance evaluations, nor were they micro-managed or placed on an action plan. Mr. Myers resigned from his position on September 30, 2007 because he felt the working environment had become intolerable.

Mr. Myers subsequently filed charges with the Maryland Commission on Human Rights and the Equal Employment Opportunity Commission ("EEOC"). He was issued a right to sue letter by the EEOC on March 4, 2009, and filed the present action in the Circuit Court of Anne Arundel County on May 29, 2009. The case was removed to this court on December 18, 2009. The complaint alleges six causes of action: Count I alleges age discrimination; Count II alleges harassment based on age; Count III alleges disability discrimination; Count IV alleges harassment based on disability; and Counts V and VI allege constructive discharge under the ADEA and ADA, respectively. The proposed amended complaint adds the same six claims under state law. MAIF argues that the complaint should be dismissed because it fails to state a plausible claim for relief. MAIF also argues that it is immune from suit under the Eleventh Amendment to the Constitution of the United States.

## **ANALYSIS**

I.  *Leave to Amend*

Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A court should deny a motion to amend "*only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (internal quotation

marks and citation omitted and emphasis in original). Where a proposed amended complaint fails to state a claim for relief, however, amendment is futile. *See, e.g., U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (affirming district court's denial of leave to amend on grounds of futility where the plaintiffs' "proposed amended complaint [did] not properly state a claim under Rule 12(b)(6) and lack[ed] sufficient particularity under Rule 9(b)").

Here, Mr. Myers's proposed amended complaint adds six analogous state law claims. Although Mr. Myers moved to amend after MAIF had filed its motion to dismiss arguing that the original complaint failed to allege facts sufficient to state a claim for relief, the proposed amended complaint does not contain any additional factual allegations that cure the original complaint's deficiencies. Mr. Myers contends that the additional state law claims address any sovereign immunity problems under the Eleventh Amendment, and that his case should be remanded to state court. But, as will be described below, the facts alleged by Mr. Myers are insufficient to state a claim for relief under either the ADEA or the ADA. For same reasons, the proposed amended complaint also fails to state a claim for relief; amendment, therefore, would be futile.

II. *Fed. R. Civ. P. 12(b)(6) Standard of Review*

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the

light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

III. *Discrimination Claims*

Mr. Myers alleges that MAIF discriminated against him on the basis of his age and physical and mental disabilities when his supervisor, Ms. Williams, (1) issued him a counseling memorandum on May 7, 2007, (2) placed him on a performance action plan on May 15, 2007, and (3) gave him a negative performance review on August 29, 2007. In addition, he alleges that he was discriminated against on the basis of his disabilities when Ms. Williams counseled him about his typing speed on January 9, 2007.

Where, as in this case, there is no direct evidence of discrimination, a plaintiff may proceed under a pretext framework and raise an inference of discrimination as set forth by the

5

Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). Although the *McDonnell Douglas* framework is an evidentiary standard and not a pleading requirement, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002), to survive a motion to dismiss, a civil rights plaintiff must make factual allegations that state a plausible claim for relief. *See Iqbal*, -- U.S. --, 129 S. Ct. at 1950. Where the facts alleged, even if true, cannot form the basis for a claim of discrimination, dismissal is appropriate.

  A. *Age Discrimination*

  The ADEA forbids "an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1). To set forth a *prima facie* case of discrimination under the *McDonnell Douglas* framework, a plaintiff must show that: (1) he is a member of a protected class under the ADEA; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) similarly situated employees outside of his protected class received more favorable treatment. *See White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2004).

  For purposes of a substantive discrimination claim, "[a]n adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks, citation, and alterations omitted). Although a poor performance evaluation could affect a term, condition or benefit of employment, it "is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or

conditions of the recipient's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F. 3d 371, 377 (4th Cir. 2004) (internal quotation marks and citation omitted). A poor performance evaluation "merely causing a loss of prestige or status is not actionable." *Id*. (internal citation omitted); *see also Haynes v. Level 3 Commc'ns,* LLC, 456 F.3d 1215, 1224 (10th Cir. 2006) (stating that a "written warning *may* be an adverse employment action only if it effects a significant change in the plaintiff's employment status") (emphasis in original); *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (explaining that "formal criticism or poor performance evaluations are not necessarily adverse actions and they should not be considered such if they did not affect the employee's grade or salary") (internal quotation marks and alterations omitted); *cf. Lewis v. Forest Pharm., Inc.*, 217 F. Supp. 2d 638, 648 (D. Md. 2002) (finding that a warning letter that barred advancement and imminently threatened probation was an adverse employment action.)

Although there is no dispute in this case that Mr. Myers, who was born in 1943, is protected under the ADEA, the discriminatory acts of which Mr. Myers complains, a counseling memorandum, a performance action plan, and a negative performance review, fail to form the basis for a plausible claim for relief because they are not, on their own, adverse employment actions. The law is clear that a negative performance evaluation or a formal criticism is actionable *only* if it results in a detrimental effect on a term or condition of employment, and neither Mr. Myers's complaint, nor his proposed amended complaint, has alleged, for instance, that he was demoted, that his advancement was barred, or that his pay or responsibilities changed as result of his negative performance evaluations. *See James*, 368 F.3d at 377-78 (holding that a negative annual evaluation was not an adverse employment action where there was no evidence that the defendant had "used the evaluation as a basis to detrimentally alter the terms or

7

conditions of the recipient's employment") (internal quotation marks and citations omitted); *Haynes*, 456 F.3d at 1225 (holding that placement on a performance improvement plan was not an adverse employment action where it had "no apparent tangible effects other than the requirement [the plaintiff] meet her sales quota and a plan to assist her in her efforts").

Rather, the complaint merely alleges in conclusory fashion that the aforementioned acts had the effect of "depriv[ing] Plaintiff of equal employment opportunities and otherwise adversely affect[ed] his status as an employee because of his age (64)" (Compl. ¶ 21); the proposed amended complaint makes no additional factual allegations. (*See* docket entry no. 12.) Even though Mr. Myers alleges that the May 7, 2007 counseling memorandum threatened termination for failure to comply, it is apparent from the face of the complaint that neither termination, nor any other adverse employment action, occurred, despite the fact that Mr. Myers received two subsequent negative performance evaluations. To survive MAIF's motion to dismiss, Mr. Myers must make factual allegations that raise his right to relief above the speculative level. Here, the court cannot infer that Mr. Myers's counseling memorandum, action plan, or negative performance review resulted in any tangible detrimental effect to the terms or conditions of his employment; to do so would be mere speculation.

The complaint also fails to sufficiently allege that similarly situated employees outside of Mr. Myers's protected class received more favorable treatment. It states merely that "[y]ounger employees did not receive similar negative performance evaluations as Plaintiff, nor were they placed on a 'three month action plan.'" (Compl. ¶ 24.) This allegation, however, is unsupported by any factual allegations, such as the employees to whom it refers, their job titles, or how their performance allegedly was deficient. Under *Twombly*, such conclusory allegations are insufficient to state a claim for relief. *See* 550 U.S. at 555. Moreover, the complaint fails to

allege any facts that would otherwise create an inference of discriminatory intent.

      B.      *Disability Discrimination*

Mr. Myers's disability discrimination claim is similarly implausible. The ADA prohibits discrimination "against a qualified individual with a disability" with regard to "job application procedures, the hiring advancement, or discharge of employees, employee compensation, job training, and other terms conditions, and privileges of employment". 42 U.S.C. § 12112(a). To make out a *prima facie* case of discrimination under the ADA, Mr. Myers would have to show that: (1) he is within the ADA's protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse employment action, he was performing his job at a level that met his employer's legitimate expectations; and (4) the adverse employment action occurred under circumstances giving rise to a reasonable inference of unlawful discrimination. *See Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001).

As described above, Mr. Myers's allegations with regard to his counseling memorandum, action plan, and negative performance review do not constitute adverse employment actions as a matter of law.[1] Likewise, his allegation that he was discriminated against when Ms. Williams counseled him about his typing speed on January 9, 2007, cannot form the basis for a plausible disability discrimination claim. Although perhaps insensitive, Ms. Williams's discussion with Mr. Myers about his typing speed, on its own, cannot be said to be an adverse employment action because there are no allegations that this criticism affected a term or condition of Mr. Myers's employment.

IV.      *Hostile Work Environment*

Mr. Myers further alleges that he was the victim of harassment based on his age and

---

[1]     The court notes that "courts have routinely used Title VII precedent in ADA cases." *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001).

9

disabilities. He alleges that Ms. Williams harassed him by giving him negative performance feedback, as discussed above, as well as by micro-managing and belittling him. The harassment was "so severe and pervasive", alleges Mr. Myers, that it affected his ability to do his job. (Compl. ¶¶ 33 & 49.) But because Mr. Myers's complaint, at the very least, fails to make factual allegations of harassment based on his age or disability that could plausibly be considered severe or pervasive, his hostile work environment claims must also be dismissed.

To establish a hostile work environment claim under the ADEA or ADA, a plaintiff must show that: (1) he is a member of a protected class under the ADEA or a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his age or disability; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. *See Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006) (assuming without deciding that a hostile work environment claim is cognizable under the ADEA); *Fox,* 247 F.3d at 177 (recognizing a hostile work environment claim under the ADA). The severe or pervasive element "has both subjective and objective components." *Equal Employment Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (internal quotation marks and citation omitted). The plaintiff must show that "he subjectively perceived the environment to be abusive", as well as that "the conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive." *Id*. (internal quotation marks, citations, and alterations omitted).

The Fourth Circuit has recognized that "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *Id*. For instance, "complaints premised on nothing more than rude treatment by coworkers, . . . callous behavior by one's supervisor, . . . or a routine difference of

opinion and personality conflict with one's supervisor" are not actionable. *Id*. (internal quotation marks, citations, and alterations omitted). The court must look at the totality of circumstances. *Id*. Factors to consider in determining the objective component of the severe or pervasive test include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Fox*, 247 F.3d at 178 (internal quotation marks and citation omitted).

Although Mr. Myers alleges that Ms. Williams micro-managed, harassed, and belittled him, the only factual allegations contained in his complaint are four performance-related discussions/evaluations over the course of eight months. These four instances of negative feedback may have been offensive to Mr. Myers, because criticism is usually unwelcome, but they were not physically humiliating, nor can it be inferred that they were specifically targeted at Mr. Myers's age or disabilities. As a matter of law, four isolated instances of this nature cannot be said to be severe or pervasive enough to form the basis for a hostile work environment claim. *See Pueschel v. Peters*, 577 F.3d 558, 566 (4th Cir. 2009) (affirming district court's decision that "isolated personnel decisions" were "not actionable" for purposes of a hostile work environment claim because they were not severe or pervasive); *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 773 (4th Cir. 1997) (finding that even assuming allegations of four gender-based comments were true, they were so "trivial" and "isolated" that they were not severe or pervasive).

Furthermore, Mr. Myers has not sufficiently alleged that Ms. Williams's conduct towards him was motivated by his age or disabilities. There are no allegations, for instance, that Ms. Williams made derogatory comments towards Mr. Myers regarding his age or disabilities; nor are Mr. Myers's allegations that younger employees and employees without reported disabilities

were treated better than he was supported by any factual allegations such that the court can infer his negative evaluations were based on his age or disabilities. *See Causey v. Balog*, 162 F.3d 795, 801-02 (4th Cir. 1998) (holding that the plaintiff had failed to establish a hostile work environment claim where there were no allegations of derogatory comments and only conclusory allegations that he was treated less favorably than younger employees). Although some courts have found that criticism implying that disabled employees are slow workers or overstate their disabilities may be considered harassment based on a disability, *see, e.g., Haysman v. Food Lion, Inc.*, 893 F. Supp. 1092, 1108-09 (S.D. Ga. 1995), the one instance in which Ms. Williams counseled Mr. Myers about his typing speed, cannot, on its own, be reasonably inferred to be severe or pervasive enough to state a claim for hostile work environment. For these reasons, Mr. Myers has failed to state a claim for hostile work environment.

V.      *Constructive Discharge*

Mr. Myers's final claims are for constructive discharge under the ADEA and ADA. He alleges that he resigned from his position at MAIF on September 30, 2007 because the working environment became "so intolerable that [he] felt compelled to resign". (Compl. ¶¶ 55 & 58.) Where an employee is not actually terminated, he may nevertheless be able to state a claim for wrongful termination "if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186 (4th Cir. 2004) (internal quotation marks omitted) (quoting *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353-54 (4th Cir. 1995)). Thus, the plaintiff must show: "(1) the deliberateness of [the employer's] actions, motivated by [] bias, and (2) the objective intolerability of the working conditions." *Id*. at 186-87 (internal citations omitted).

The Fourth Circuit has "insisted that [the claim of constructive discharge] be carefully

cabined" because it is "so open to abuse by those who leave employment of their own accord". *Id*. at 187 (internal quotation marks and citation omitted). Accordingly, as a matter of law, "dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Id*. (internal quotation marks and citation omitted). Put simply, employees are not "guaranteed a working environment free of stress." *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994) (internal quotation marks and citation omitted).

The facts alleged in Mr. Myers's complaint, even if true, cannot establish objectively intolerable working conditions. In *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004), the Fourth Circuit affirmed dismissal under Rule 12(b)(6) of a constructive discharge claim where the plaintiff had alleged that "her supervisors yelled at her, told her she was a poor manager and gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back." The Fourth Circuit held that "these allegations, even if true, [did] not establish the objectively intolerable working conditions necessary to prove a constructive discharge." *Id*. The allegations in the present matter are similar, but not as severe. Thus, despite Mr. Myers's subjective experience, as a matter of law, the conditions of which he complains were not so intolerable as to cause a reasonable person to resign. *See, e.g., Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 263 (4th Cir. 2006) (holding that while comments to the plaintiff about his having to work half days "may [have] revealed an insensitivity to his disability, they [did] not nearly rise to the level of intolerability.") Moreover, the complaint is devoid of any allegations suggesting deliberateness on the part of MAIF to induce Mr. Myers to quit. Accordingly, Mr. Myers has not stated a plausible claim for constructive discharge.

## **CONCLUSION**

Presented with MAIF's motion to dismiss, Mr. Myers chose to file a proposed amended complaint that simply added identical state law claims, rather than new factual allegations from which more than the mere possibility of misconduct might be inferred. *See Iqbal*, -- U.S. --, 129 S. Ct. at 1950. Because Mr. Myers has failed to state a claim for relief that is plausible on its face, this lawsuit will be dismissed, and Mr. Myers's motion for leave to amend will be denied.[2] A separate Order follows.

| August 9, 2010 | /s/ |
|---|---|
| Date | Catherine C. Blake |
| | United States District Judge |

---

[2] Because Mr. Myers has failed to state a claim for relief under the ADEA or ADA, the court will not address MAIF's Eleventh Amendment argument. The court notes, however, that the Supreme Court has squarely held that neither the ADEA, nor Title I of the ADA, validly abrogates the States' sovereign immunity. *See Bd. of Trs. of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 (2001) (holding that Congress did not validly abrogate sovereign immunity under Title I of the ADA); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91 (2000) (holding that the "ADEA's purported abrogation of the States' sovereign immunity is . . . invalid"). Furthermore, although it is clear that Title II of the ADA abrogates sovereign immunity for certain types of claims, *see United States v. Georgia*, 546 U.S. 151, 159 (2006) (holding that Title II of the ADA abrogates sovereign immunity insofar as it "creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment") (emphasis in original), it is not obvious that Mr. Myers's claims can be brought under Title II at all or, if they can, that sovereign immunity has been abrogated in this type of case. *See Garrett*, 531 U.S. at 360 n.1 (acknowledging that the Courts of Appeals are divided on whether employment discrimination claims are available under Title II, but declining to resolve the issue).